JOHN KEATHLEY, Admr. v. TENNESSEE RAILROAD CO.

Eastern Section.  September 25, 1925.

No petition for Certiorari was filed.

1. **Judgment.** A decree of an Appellate Court rendered conditionally, does not become a nullity where it is allowed to remain upon the minutes of the court.

In an action where the Appellate Court rendered a conditional decree, conditioning that the appellant file a pauper's oath within ten days and the oath was not filed and the matter was left on the records, held that the decree did not become a nullity at the end of the ten days.

2. **Courts. Jurisdiction.** Appellate Court has jurisdiction to grant more than one leave to file pauper's oath.

In an action where the Appellate Court rendered a decree conditionally, conditioned upon the filing of a pauper's oath, and granted leave to file the oath and the same was not filed, held that the Court had not exhausted its jurisdiction by the granting of the one leave to file the oath, and upon a proper showing justifying an extension it had jurisdiction to extend the time and permit the oath to be filed at a later date.

Appeal in Error from Circuit Court, Anderson County; Hon. J. H. S. Morison, Judge.

J. H. Underwood, J. H. Wallace and J. B. Burnett, of Clinton, and D. W. Byrge, of Oakdale, for plaintiff in error.

John M. Davis, of Wartburg, Chas. M. Davis, of Oneida, and Fowler & Fowler, of Knoxville, for defendant in error.

SNODGRASS, J. The career of this case, due, as it appears, to inadvertence and inattention, has been somewhat checkered, if not unfortunate. It is the suit of John Keathley, Administrator of his deceased minor son, to recover the sum of $25,000 as damages against

the defendant for alleged personal injuries, resulting, as was claimed, in the death of his son.

The declaration contains three counts. In the first count, omitting unnecessary verbiage, it was alleged that on the 29th of September, 1922, the defendant was, and now is, operating, managing and controlling a certain line of railway between Oneida, Tennessee, and certain parts of the Tenth District of Anderson county, Tenn., equipped with the necessary paraphernalia and servants usual in the operation of such railway, and that on said date and in said Tenth District and county the defendant wrongfully, negligently and unlawfully ran its engine and cars in, on and against Thurston Keathley, a minor son of the plaintiff, whereby and on account of which his son Thurston Keathly was wounded, bruised and mangled in body, head, arms and legs, thereby causing great mental and physical pain and suffering for many hours, and on account of which it was alleged he died.

The second count is substantially the first, except it is alleged that thus equipped the defendant was running its cars, consisting of engine, caboose and twelve log cars, at a rate of 35 or 40 miles an hour over and along a part of the main track of said railroad, and on a part of said road which had been used by the public, with the consent of the defendant, as a pass-way, over, along and across said track for years, and when the defendant knew, or could have known that persons were then using said track as a pass-way, and while so running said train at said high rate of speed over, along and near that part of said track, the defendant carelessly, recklessly and unlawfully removed all of its employees from said train of log cars, and then cut said train of log cars loose from said engine and caboose, and carelessly, negligently and unlawfully permitted said train of log cars to run wild over and along said track at said fast rate, with no servant or employee thereon or in control thereof. That plaintiff's intestate was walking along said track, where he and others had been accustomed to walk for a long period of time, and as said engine approached him he stepped off the track and said engine and caboose passed him, and after said engine and caboose had so passed him, and having no warning or knowledge of the approach of said train of log cars, running wild as aforesaid, he started to cross the track of said railroad, at a pass-way or crossing which had been so used for a long time by said intestate and others, and when the defendant knew, or ought to have known, that the plaintiff's intestate and others were accustomed to be on and use said track as aforesaid, and while so crossing said track he was struck by said train of log cars, which were being unlawfully run and operated as aforesaid, and was wounded, bruised and mangled, and thereby caused to suffer much mental and physical pain for many hours,

and did then die therefrom, and that he left surviving him his father, John Keathley, his mother, three brothers and seven sisters, and was an infant, unmarried at the time of his death.

The third count is substantially the second, but in addition it was alleged that the servants of the defendant operating the cars were then drunk or drinking, and under the influence of intoxicating liquors, which fact was known to defendant, or by the exercise of reasonable care could have been known by it, and that they carelessly, recklessly and unlawfully removed themselves from said train of log cars, and then cut said train of log cars loose from said engine and caboose, and carelessly, negligently and unlawfully permitted said train of log cars to run wild over and along said track at said fast rate, with no servant or employee thereon or in control thereof. That plaintiff's intestate, Thurston Keathley, was walking along said track, where he and others had been accustomed to walk for a long period of time, and as said engine approached him he stepped off the track, and said engine and caboose passed him, and having no warning or knowledge of the aproach of said train of log cars, running wild as aforesaid, he started to cross the track of said road at a pass-way or crossing which had been so used for a long time by said intestate and others, and when the defendant knew or ought to have known that the plaintiff's intestate and others were accustomed to be on and use said track as aforesaid, and while so crossing said track he was struck by said train of log cars, which were being unlawfully run and operated by the servants of defendant, while they were drinking and in an intoxicated condition as aforesaid, and was wounded, bruised and mangled, and thereby caused to suffer much mental and physical pain for many hours, and did then die therefrom, for which he sues, etc., etc.

Issue being joined the case came on for trial before the court and jury on the 24th day of May, 1923, when upon motion entered at the proper time the jury returned a directed verdict in favor of the defendant, and the case was dismissed at the cost of the plaintiff. The order of dismissal closed with this minute record of the application of the defendant:

"Whereupon the plaintiff moved the court to show cause why a new trial should be granted him in this case."

The next order, dated July 19, 1923, is as follows:

"In this case comes the plaintiff and moves the court to set aside the directed verdict of the jury and grant him a new trial on the following grounds:" Then follows a number of grounds, among them for newly discovered evidence.

And then on July 20th, an order which recites:

"The plaintiff moved the court for a new trial at the May term, 1923. The court set the motion down for hearing at the adjourned

term of court on July 19, 1923. Said motion was heard by the court at the adjourned term of said court on July 20, 1923, after a consideration of which the court overruled said motion, as shown by entry on the minutes of the court, and the plaintiff then and there excepted, and now excepts to the action of the court in overruling said motion and dismissing the plaintiff's suit and taxing plaintiff for the costs of the case. The plaintiff prays an appeal to the next term of the Court of Civil Appeals which meets at Knoxville, Tennessee, and said appeal was by the court granted. Upon application of plaintiff he is allowed sixty days in which to prepare his bill of exceptions. When said bill of exceptions is filed the same shall become a part of the record in this cause; and for sufficient reasons shown to the court plaintiff is allowed to file a pauper oath in lieu of an appeal bond.''

On September 10th both the oath and the bill of exceptions were filed, and the case having thus been brought into this court, an assignment of error was had, as follows:

### 1.

''The lower court erred in instructing the jury to return a verdict in favor of the defendant, and in overruling the motion of plaintiff to set aside the verdict of the jury and grant him a new trial. The court should have sustained each ground in said motion, and granted a new trial, for the following reasons.''

''The proof clearly shows that the defendant, on September 29, 1922, deliberately cut the train of twelve log cars loose from the other part of the train, and allowed said cars to run wild over and along a part of the main line, which had been used by the public, with the knowledge and consent of the defendant, for eight or nine years as a public passway, and where the public, including the deceased, Thurston Keathley, had been permitted to use said railroad as a passway for all these years. It was the duty of the defendant, in operating its trains over and along this part of its tracks, to keep a careful lookout for persons using said track as a passway. The proof further shows, from the evidence of defendant's employees, that they knew persons were continually using this part of the road, and it was gross negligence for the defendant to permit this train of log cars to run wild over and along this part of the road, at from ten to twenty miles per hour. It is not insisted that the defendant was engaged in switching its cars at this time. It had been the custom of the defendant for years to leave the log cars intended for the Indian Fork Switch branch down below the switch, and not to run them on past the switch and run them on that part of the road used by persons as passway, and where Thurston Keathley was killed.''

2.

"The proof in this case shows conclusively that the servants of the defendant purposely cut loose the train of twelve log cars and allowed them to run wild over and along its main line, without any person on said train of cars, to keep a lookout for persons or obstructions on the track."

"In strict law, Thurston Keathley was not a trespasser on the track of the defendant, but was a licensee, but if he had been a trespasser thereon, it does not follow that this fact would excuse the defendant from killing him as it did."

It was held that such assignment of error could not be considered, because it was found that the motion for a new trial had not been filed within thirty days from the rendition of the judgment in the lower court, and the case was dismissed in this court. Thereupon the plaintiff filed a petition to rehear, in which it was made to appear that such motion was filed in time, but had been by the court continued over until a later date, the court holding that while the pauper oath had not been filed in time, that this fact was not insuperable to a rehearing, because of the power in this court under the authority of the case of Jones v. Ducktown Sulphur, Copper & Iron Company, 109 Tenn., 365, to grant additional time in which to file said oath. Whereupon this court granted the rehearing, upon condition that the pauper oath was filed within ten days, and, assuming that such oath would be filed, passed upon the assignments of error and reversed the case conditionally, so as to send the case back for a retrial upon both the statutory and common law counts, but provided that in case such oath was not filed that the appeal will be dismissed, this alternative appearing in these words in the opinion:

"The petition for a rehearing asks that this court permit the appellant to execute a new pauper oath in lieu of an appeal bond, which this court grants, and the defendant (meaning appellant) is allowed ten days in which to execute and file the pauper oath, in default of which the appeal will be dismissed; but assuming that the petitioner, plaintiff in error will file the oath, we now assume to pass upon the facts of the case."

Thereupon the court took up and passed upon the merits of the case, with the result indicated. The opinion of Judge Crownover on this motion to rehear filed August 22, 1924, is here referred to and made part hereof. The decree was entered on August 22, 1924, reversing the case, and the opinion was overlooked which made it conditional, and that upon failure to execute the proper oath within the time allowed another decree might be entered dismissing the case, the said decree that was entered being absolute and unconditional.

From this decree a certiorari was prosecuted to the Supreme Court, which court upon the hearing entered the following decree on December 8, 1924.

"This cause came on to be heard on the transcript of the record from the circuit court of Anderson county, opinion and judgment of the Court of Civil Appeals, petition of certiorari, assignments of error and brief of counsel, from all of which the court is of opinion, and orders and adjudges that the judgment of the Court of Civil Appeals should be modified so as to remand this case for trial upon the question of common law negligence alone."

"It is further ordered, adjudged and decreed by the court that this case be, and is, remanded to the Court of Civil Appeals for further proceedings in accordance with the per curiam opinion filed herein and made part of the record. The defendant in error, the Tennessee Railroad Company, will pay the costs of the appeal to the Court of Civil Appeals and of this court, for which execution is awarded."

By reference to the opinion of the Supreme Court, which is here referred to and made part hereof, it is perceived that the judgment modifying the action of this court is intended only as advisory, and that it was the purpose to remand the case to this court for action with our power in relation thereto unimpaired by its former action. The court said: "The entry of the judgment in the Court of Civil Appeals previous to the filing of any pauper's oath in that court by the plaintiff in error was an inadvertence on the part of the clerk. In Judge Crownover's opinion permission was granted to the plaintiff in error to execute a pauper's oath in the Court of Civil Appeals, to meet the lack of seasonable oath or bond in the court below." And the opinion continued: "In default of which the appeal will be dismissed. But assuming that the petitioner, plaintiff in error will file the oath, we now assume to pass upon the merits of the case."

"The entry of the order of reversal in the Court of Civil Appeals was therefore a mistake, no oath having been filed in that court. We must therefore remand the case to the Court of Civil Appeals. Plaintiff in error can make to that court his excuses for not filing the pauper's oath required and apply to that court to renew its judgment reversing the judgment below and remanding the case."

Now upon the return of the case to this court from the Supreme Court comes again the plaintiff in error with a petition to be now permitted to file the oath, which he was permitted to do by the former order of this court, and failed, tendering with said petition the oath, which if he is now permitted to file will vest this court with jurisdiction to proceed with the case as seemeth best and right.

The petition sets forth the history of the case practically as hereinbefore indicated, and presents the excuse for not filing said oath

the action of this court in the entry of the decree conditionally reversing the case. It states that when the case was decided by this court two of the attorneys were present and heard the judge remand the case, and that he said nothing about filing a new pauper's oath; but that in order to be sure that no such demand or condition of reversing the case was required by the court. Mr. J. B. Burnett, one of the attorneys for petitioner, called the clerk of this court and asked him if anything was to be done by petitioner under the decree reversing said case, and the clerk assured Mr. Burnett that the decree required nothing further to be done in order to make said reversal effective; and that relying upon the decree itself, and upon the statement of the clerk of this court that nothing further was to be done, the petitioner did not file the pauper oath, though he was ready and willing and would have done so had he known that this court intended that he should.

Supporting the allegations of the petition the affidavits of J. B. Burnett and J. H. Underwood, two of his attorneys, and that of himself were filed, and he prays to be allowed now to file said oath, and that the court renew its judgment reversing the judgment of the lower court and remanding the case for a new trial.

The answer to the petition also sets out a short history of the case and makes the question upon the record that the opinion of Judge Crownover which stated that in default of the filation of the oath within ten days that the appeal will be dismissed has become absolute and binding, the decree that was entered having become a nullity after the ten days had expired; and further that this court has lost its jurisdiction of the case, having once granted permission to file oath, which was not filed.

We do not think the decree became a nullity ten days after its entry. Entered as it was and allowed to remain upon the minutes by the sanction of the court without any expressed alternative modifying it, it became, and would have remained, the judgment of the court, thus nullifying or amending any alternative expressed in the opinion, if it had not been void upon its face as being entered without jurisdiction. But the defendant in error itself took the certiorari route to get rid of the effect of the decree, and the Supreme Court has remanded it as stated for proper disposition, indicating its opinion as to what that proper disposition should be if the plaintiff in error is now allowed to file the oath which he tenders, and if as insisted its decree adjudicating any question is abortive as without jurisdiction, the case would stand as without any action save the removal of the inadvertently entered decree, and the opinion of Judge Crownover as to what should have been then done as to dismissal is not self-executing, nor is it now binding upon this court, having been reinvested with plenary jurisdiction by the remand from the Supreme Court.

Nor do we think that the court has exhausted its jurisdiction to grant leave to file the oath simply because its effort to do so was rendered abortive by the failure of the plaintiff in error to comply with the condition, if indeed there is no rule of law or statute of limitation that would interfere with a second attempt, and none has been cited. It is simply a question as to whether or not a sufficient excuse has been rendered, so that an abuse of discretion may not be had. No question seems to have been made challenging the sufficiency of the excuse for delay. The plaintiff in error avers that he was missled by the entry of the decree itself, and the statement of the clerk in relation thereto, coupled with the failure of the judge to refer in his oral opinion or memorandum of the written opinion to refer to the question of the oath. While written opinions are filed by this court, they are usually, being lengthy, not read by the judge announcing the disposition of the case, and it frequently happens that in such announcements all the points are not covered or mentioned, and the written opinion should be the source of information to the lawyers in the cases as to details. It is no part of the duty of the clerk to interpret these opinions to lawyers, though many of the practitioners living at a distance from the court are necessarily obliged to make use of his generously yielded accomodation in that particular. However, it is his business to prepare decrees where the lawyers fail to do so, and in this instance it appears that the court itself in permitting the untimely entry of the decree in its absolute and unconditional character to remain upon the minutes was involved in responsibility for the misleading of the plaintiff in error. Therefore, adopting the opinion heretofore rendered reversing the case, but modifying it in the particulars suggested in the opinion of the Supreme Court, the clerk is directed to mark filed the oath tendered with the petition, and the case will be reversed and remanded and the cause submitted to the jury upon the question of common law negligence as suggested in the opinion of the Supreme Court. The defendant in error, the Tennessee Railroad Company, will pay the costs, as directed in the decree of the Supreme Court.

Portrum and Thompson, JJ., concur.